[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR MODIFICATION (NO. 108)
On January 8, 1987, the twenty-eight year marriage of CT Page 2100 the parties was dissolved on an uncontested basis in this Judicial District. The separation agreement dated December 1, 1986 was incorporated by reference into the judicial decree. Pursuant to Article IV of the agreement, the plaintiff-husband agreed to pay periodic alimony to the defendant-wife during his lifetime or until the death or remarriage of the defendant. Article 4.2 provides for alimony to continue when the plaintiff retired at one-third of all benefits derived from "whatever source".
The monthly alimony payable on dissolution was $2,250.00, reduced to $1,750.00 on July 1, 1987. It is being paid at the same rate presently.
The marital home in Ridgefield, Connecticut was to be sold with the plaintiff receiving $35,000.00 of the net proceeds. The defendant received the balance, $243,000.00 upon sale in January, 1987.
In February, 1987, defendant purchased for $155,000.00 a 2,000 square foot, two story townhouse condominium in Innisfree, a section of Durham, North Carolina, free of mortgage.
During the marriage, defendant had been a homemaker, raising two children of the marriage and plaintiff's youngest sister from the girl's age of five.
In North Carolina she eventually began a small interior decorating business.
On July 3, 1989, defendant and Dr. Francis F. E. Morse, as equal tenants in common, purchased for $400,000.00 a home in Durham, North Carolina in the Treyburn area, containing 3,800 square feet in living area not including the garage, deck and patio. The first floor contains six rooms including the master bedroom. There are three bedrooms on the second floor. Altogether, the home has four and one-half baths. The lot is located off the sixteenth fairway of a new CT Page 2101 country club called Treyburn Country Club on a cul-de-sac. According to the defendant, the premises are now worth $410,000.00
In October, 1989, defendant told plaintiff of her new address and that she had purchased the home in her name alone. In mid 1990, plaintiff hired an investigator which resulted in the filing of this motion dated March 13, 1991.
In addition to the testimony of the parties, this court had available the depositions of Dr. Morse (Defendant's Exhibit 5), Jerry Lee Van Houten, general manager of Treyburn Country Club (Plaintiff's Exhibit A), and William V. Leaming, an acquaintance of both parties. (Plaintiff's Exhibit B.)
Dr. Francis Morse is a 70 year old dentist whom defendant met at a meeting of a group organized to aid cancer patients. At the time, Dr. Morse's second wife had recently died from cancer. He was living in his own home and practicing his profession on a four to four and one-half days weekly schedule. His children by his first marriage are all adults living on their own in various parts of the country. Sometime later, Dr. Morse, who began dating defendant, hired her on a part-time basis to be all around secretary-receptionist assistant to him. He already had one woman performing those same functions as well as a dental hygienist. They still work for him.
Defendant is paid an annual salary of $21,000.00 for working twelve hours a week, plus accompanying the doctor to the office when a patient is seen on an emergency basis, and to total the monthly figures to give to the doctor's accountant. The latter takes about four hours each month.
The doctor takes a weekly draw from his professional corporation, which based upon his 1989 and 1990 federal 1040 form shows his annual wages to have been $52,688.00 and $42,000.00, respectively. The annual wage does not include all the other benefits paid for the doctor by his professional corporation, such as the expenses incurred at the Treyburn Country Club.
It strains the credibility of this judge to believe that the $21,000.00 paid to the defendant, which is half the dentist's reported 1990 total wages, represents a true salary. No dental assistant is paid for less than a twenty hour workweek one-half of what an experienced dentist is paid. However, it is an excellent method to divert income into two separate tax returns, reducing taxes and obtaining the benefits of the companionship, homemaking and hostess talents of the defendant. CT Page 2102
While the dentist paid the down payment and the majority of the closing costs, defendant obtained a bridge loan, then sold her townhouse for $176,000.00 in September, 1989 (a $21,000.00 gross profit) to join in the purchase. The purchase mortgage was only $60,000.00
After September, 1989, defendant still owed Dr. Morse $55,000.00 on her half share of the purchase. She claimed she paid $47,000.00 through her services as an interior decorator for the house by overseeing the persons who did the painting and wallpapering, and by purchasing appliances, drapes, and furniture for the home. The home not only included new furniture but also the furniture from the separate homes of the defendant and the dentist.
Defendant also claims as part of her payment on the house another $3,100.00 incurred at J. C. Penney, which debt she pays monthly.
The figures of the defendant can not be accepted by the court because she included such items as purchases made by her interior decorating business in 1991. She put all her figures together for this hearing and not at or near the time of the events. By the way, the defendant's current financial affidavit contains no reference to her interior decorating business.
Defendant claims the purchase of the home with Dr. Morse to be simply a business investment. Yet she paid over half the initiation cost of the social membership at the Treyburn Country Club on which she and Dr. Morse are listed as one membership as any husband and wife would be. The ordinary fees and expenses for same are paid by Dr. Morse's professional corporation.
Defendant says the relationship is purely platonic and for business purposes. While the relationship may have economic benefits, it is not purely platonic. The defendant has accompanied Dr. Morse to the national dental convention held in Chicago twice with the two staying in one hotel room. However, the defendant did not attend any convention programs for office managers or dental assistants nor did she act as hostess at any professional gathering for Dr. Morse.
She has also spent social weekends with Dr. Morse with friends away from Durham and with his family in New England.
Dr. Morse testified in his deposition that he has no intention of marrying again; that he has had enough of that. CT Page 2103 The parties on July 7, 1989 did sign a self-drawn agreement (Defendant's Exhibit 5-3) agreeing to divide equally all mortgage payments, property taxes, and utilities on an annual basis. That agreement has not been followed. The dentist pays the mortgage, taxes and house insurance. The defendant pays the utilities and household food, including normal household items.
Also, Dr. Morse, on June 15, 1989, took out a twenty year $50,000.00 term life insurance policy naming the defendant as the beneficiary (Defendant's Exhibit 5-4). He did so, he testified, to protect the defendant in the event of his death so that she could continue to pay the mortgage until she sold the house.
Another reason this court has difficulty accepting defendant's testimony as true is her failure to testify truthfully about issues not involved in this motion. For example, she flatly denied plaintiff paid for the youngest son's college education. In fact, he spent between $45,000.00 to $50,000.00 for four years of college costs. He refused to pay for another semester after the four years. Defendant, before moving in with Dr. Morse, was living in a large, comfortable townhouse, receiving $21,000.00 annually in alimony and was able to begin a modest business which also brought in income, figures not provided to the Court.
It was she who chose to move to Treyburn into an extremely large house and to live with Dr. Morse, who provided her with another $21,000.00 annually. It is quite clear the defendant's present economic status is created by a former husband and a live-in male who chooses not to marry. The question is under all the circumstances should the former husband continue to pay alimony.
The plaintiff's assets have diminished by almost $91,000.00 and his liabilities increased by $28,000.00 since the divorce. Most of the liabilities result from the college education of the son and paying off debts from the first marriage.
Plaintiff's present employment is less than five years in length but his earnings, including bonus, have increased by one-third since January, 1987.
Defendant asserts that since the separation agreement makes no reference to termination of alimony should the defendant come within the purview of section 46b-86 (b), it does not apply to her. She asserts that because the CT Page 2104 plaintiff's attorney did not request it be included and only requested that the agreement specify that alimony would terminate upon the death or remarriage of the defendant (Defendant's Exhibit 4), plaintiff may not assert any legal rights under section 46b-86 (b).
This is, of course, sand in the eyes. Many agreements do not refer to that statute. Failure to refer to it does not exclude it as the law in Connecticut. To prevent existing law from carrying into play the parties must assert same positively beforehand in the agreement. Silence does not.
Merely restating the law, as requested by the attorney for the plaintiff in Exhibit 4, only assured the defendant of no misunderstanding of her rights as far as number of years was concerned. Even if not mentioned, the law would still apply.
If defendant wished to exclude the operation of section 46b-86 (b), she would have had to negotiate for it and have it put into the final agreement of the parties. It was not in the agreement and the law of Connecticut applies.
It is obvious the defendant was aware of the law because she lied to plaintiff about being the sole purchaser of the Treyburn home.
Defendant also asserts that the motion fails to refer to subsection (b) of section 46b-86 and therefore fails to notify defendant of the claims to be made under paragraph (b). The motion is quite clear that subparagraph (b) is directly implicated. Paragraph 5 of the motion clearly states that "[t]he plaintiff believes that the defendant has been cohabitating with Dr. Frank Morse, an unrelated male, at their home in Durham, North Carolina, and said cohabitation results in a substantial change in circumstances".
The Court finds the defendant is living with another person, Dr. Frank Morse, in their jointly owned home, and that the financial arrangements directly benefit the defendant. The plaintiff's income is now going to support a former wife who is being well supported by another unrelated adult male. The purpose for alimony no longer existing, the Court terminates alimony.
The motion is granted.
PATRICIA A. GEEN, JUDGE CT Page 2105